

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

**ENTERED**
**03/05/2015**

| | | |
|---|---|---|
| IN RE: | § | |
| **PEDRO L. DIAZ,** *et al* | § | **CASE NO: 06-10329** |
| **Debtor(s)** | § | |
| | § | **CHAPTER 7** |
| | § | |
| **PEDRO L. DIAZ,** *et al* | § | |
| **Plaintiff(s)** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 14-1009** |
| | § | |
| **HEAVY ACTION RECOVERY,** *et al* | § | |
| **Defendant(s)** | § | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Pedro Diaz and Alicia Diaz filed suit against Heavy Action Recovery, Inc. and ARA, Inc. ("Defendants") for violation of the Court's discharge injunction and various federal and state statutes. The Court granted Plaintiffs' Motion for Default Judgment on November 17, 2014. Plaintiffs agreed to a final judgment awarding damages solely for violations of the discharge injunction as well as an injunction preventing further violations on the part of Defendants.

The Court awards Plaintiffs' actual damages of $591.20 and $12,236.92 in attorney's fees. ARA is solely liable for these awards. The Court sanctions ARA in the amount of $17,000.00. ARA is enjoined from taking further actions to collect the Chase Manhattan Bank debt from Plaintiffs.

### Factual Background

Plaintiffs filed for chapter 7 relief on May 31, 2006. In their bankruptcy schedules, Plaintiffs listed Heavy Action Recovery as an unsecured creditor for $9,036.00. (ECF No. 1-1 at 3). Heavy Action Recovery had purchased the original debt from Chase Manhattan Bank. On

September 20, 2006, Plaintiffs obtained their discharge.  (Case No. 06-10329; ECF No. 18).  A

copy of the discharge order was mailed to Heavy Action Recovery at 2954 Delaware Ave.,

Kenmore NY 14127.  (Case No. 06-10329; ECF No. 20).  Despite their knowledge that the debt

had been discharged in bankruptcy, Heavy Action Recovery sold or assigned the debt to ARA,

Inc. at some point after the discharge.   On August 12, 2013 ARA, Inc. mailed a letter to

Plaintiffs, which stated in full:

> Please return top portion of this notice with payment.
>
> ORIGINAL CREDITOR: Chase Manhattan Bank
> ACCOUNT NUMBER: 5179458280035910
> CURRENT BALANCE: $10,550.84
>
> ARA FILE #: 1311817-01
>
> This letter is [*illegible*] ARA, Inc. has recently obtained and now is the legal
> owner of your Chase Manhattan Bank Account.  All obligations regarding this
> debt and any applicable interest and or fees have been fully transferred to this
> office.  As of today, you owe $10,550.84, which is now due in full.
>
> Your financial and credit history are currently being reviewed by our finalization
> department to determine our next course of action.  Should this debt go unpaid
> our intention is to seek whatever remedies are available.  Please remit a check for
> the amount of $10,550.84 payable to ARA Inc. along with the payment slip above
> in the self addressed envelope provided.  Within 30 days of full payment, you will
> receive a paid in full letter for your permanent records.
>
> If you are unable to pay the entire balance in full, please call Mark Farmer at ext.
> 3402 Monday – Friday 8:00am – 5:00pm central to discuss acceptable payment
> arrangements and answer any questions you may have.  Please retain the balance
> of this letter for your records.
>
> Sincerely,
>
> Mark Farmer
>
> This is an attempt to collect a debt.  Any information obtained will be used for
> that purpose.  Unless you notify this office within 30 days after receiving this
> notice that you dispute the validity of this debt or any portion thereof, this office
> will assume that the debt is valid.  If you notify this office in writing within 30
> days of receiving this notice, that you disputee [*sic*] the validity of the debt or any

portions thereof, this office will obtain a copy of a judgment and mail you a copy
of such verification.  If you request in writing, within 30 days after receiving this
notice, this office will provide you the name and address of the original
ORIGINAL CREDITOR, if different that [*sic*] the current ORIGINAL
CREDITOR.

(ECF No. 1-1 at 16).  On August 13, 2013, ARA sent a similar letter to Plaintiffs, again

demanding $10,550.84 in payment.  (ECF No. 1-1 at 18).  Alicia Diaz contacted ARA shortly

after receiving the letters and informed them that the debt had been discharged through

bankruptcy.  Ms. Diaz testified that an ARA employee responded by threatening her and her

husband with jail time due because they had obtained the debt using their son's social security

number (an allegation which Plaintiffs deny).  She further testified that ARA threatened to ruin

her son's credit rating.  Ms. Diaz and an ARA representative communicated again several times.

She informed the representative repeatedly that the debt had been discharged, but the demands

for payment and threats of legal action continued.

　　　　In response to ARA's collection efforts, Ms. Diaz agreed to pay $200 immediately with

another $2,786.12 to be paid on August 23, 2013.   Ms. Diaz provided her bank account

information to ARA over the phone.  However, Ms. Diaz then consulted her bankruptcy attorney

and closed the bank account to prevent ARA from withdrawing any funds.  ARA proceeded to

make a series of harassing calls to both of Plaintiffs' cell phones.  Although it is unclear exactly

how many calls Plaintiffs received, Plaintiffs did provide recordings of 23 debt-collection

voicemails to the Court.  The transcripts of several of these messages are provided below:

> "Hello, my name is Matthew Klein and this is my second attempt to contact you
> regarding an affidavit of complaint concerning your name and social security
> number.   Unfortunately, failure to respond to this message will result in
> documentation being forwarded to your local jurisdiction for a service of
> summons.  If you do have any questions or concerns regarding this paperwork,
> please contact my office at 855-219-4669.  Thank you."

"Good morning. Good afternoon. This is Revenue Recovery Service calling to reach out to Pedro Diaz. We have received a claim in our office that is seeking potential legal action. We would like to obtain a voluntary statement of intent from you before you waive your legal right to be heard on this issue. . . ."

"This is Charles Clay with Legal Caring Services. I have a summons in hand for you. I am scheduled to go out to your home and place of employment within the next 24 hours. Please make yourselves available with two valid forms of ID. If you are served a summons at work, a supervisor or head of security will need to be available to sign off as a witness. Please be advised, failure to sign for the summons may result in a missed court appearance. . . ."

Due to stress caused by the continuous stream of phone calls, Ms. Diaz went to see a doctor who advised her to receive massage therapy. Plaintiffs also each took two-and-a-half days off of work to meet with their attorneys and attend a court hearing in connection with this lawsuit.

## Procedural Posture

On July 18, 2014, Plaintiffs filed suit against Heavy Action Recovery and ARA. The complaint alleged violations of the September 20, 2006 discharge order, the Fair Debt Collection Practices Act, the Telephone Consumer Protection Act, and the Texas Fair Debt Collection Practices Act. (ECF No. 1). Defendants were served with process via the Texas Secretary of State on August 21, 2014. (ECF No. 12 at 1). Defendants failed to answer the complaint within the 30-day period after the issuance of summons provided by Fed. R. Bankr. P. 7012(a).[1] On October 28, 2014, Plaintiffs moved for entry of default. (ECF No. 15). On November 17, Plaintiffs then moved for default judgment. The Court granted the motion for entry of default on November 17, 2014. At a hearing held on that date, Plaintiffs agreed that the default judgment would only encompass violations of the discharge order. On January 15, 2015 the Court issued an order directing the Clerk of Court to enter default against Defendants. (ECF No. 21) Default

---

[1] "If a complaint is duly served, the defendant shall serve an answer within 30 days after the issuance of summons. . . ."

was entered on January 22, 2015.  (ECF No. 23).  The Court issues this memorandum opinion to address damages for violation of the discharge order.

## Analysis

*A Civil Contempt Order against Heavy Action Recovery Is Not Appropriate*

Section 524 of the Bankruptcy Code provides that once a debt has been discharged in bankruptcy, the discharge order "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor. . . ." 11 U.S.C. § 524(a)(2).  "The discharge injunction is broad and prohibits any taken act to collect a discharged debt as a personal liability of the debtor." *McLure v. Bank of Am. (In re McCLure)*, 420 B.R. 655, 659 (Bankr. N.D. Tex. 2009).  Bankruptcy courts can subsequently "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  A civil contempt order "which compensates a debtor for damages suffered as a result of a creditor's violation [of the discharge injunction] is both necessary and appropriate to carry out provisions of the bankruptcy code." *Placid Refining Co. v. Terrebonne Fuel and Lube, Inc. (In re Terrebonne Fuel and Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997).

A bankruptcy court's decision to impose sanctions is discretionary. *Id.*  "[C]ompensatory damages, in addition to coercive sanctions, may be awarded as a sanction if a party willfully violates a section 524(a)(2) injunction." *In re Sandburg Fin. Corp.*, 446 B.R. 793, 803 (S.D. Tex. 2011) (citing *In re Eastman*, 419 B.R. 711, 725 (Bankr. W.D. Tex. 2009).  A defendant need not have the specific intent to violate the discharge injunction for its actions to be willful, rather an action is willful if (1) the defendant knows the injunction has been entered and (2)

intends the actions that violate it.  *McClure*, 420 B.R. at 663.  "That the actions are intentional—as opposed to the actual violation of the injunction being intentional—is sufficient."  *Id.*

This Court grants Plaintiffs' motion for default judgment.  Defendants have neither filed an answer nor otherwise defended this lawsuit.  The Court therefore accepts as true the well-pleaded allegations stated by Plaintiffs in their complaint and their facts set forth in evidence.  *See J & J Sports Prods., Inc. v. Palma*, 2012 WL 1853519 at *2 (N.D. Tex. May 21, 2012).  Plaintiffs have established that Heavy Action Recovery assigned ownership of the debt in question despite actual knowledge that the debt had been discharged in bankruptcy.  The mere assignment of a debt is not an attempt to collect upon that debt, however.  *See Commodore Holdings, Inc. v. Exxon Mobil Corp.*, 331 F.3d 1257, 1259 (11th Cir. 2003) (holding that an assignment of debt for consideration is not in itself an unlawful collection practice).  Without evidence that Heavy Action Recovery assisted ARA's attempts to collect upon the debt, a civil contempt order against Heavy Action Recovery is not appropriate.  Plaintiffs' have not presented any such evidence.

*A Civil Contempt Order against ARA Is Appropriate*

By contrast, the evidence of ARA's willful violations of the discharge injunction is overwhelming.  After receiving two letters from ARA requesting payment of $10,550.84, Ms. Diaz immediately called the ARA representative and informed him that the debt had been discharged in bankruptcy.  At this point, ARA had actual knowledge of the bankruptcy injunction.  Instead of immediately halting attempts to collect the discharged debt, ARA began to threaten and harass Plaintiffs.  ARA threatened Mr. Diaz with jail time because of the confusion over the son's social security number, it threatened to ruin the son's credit rating, and it threatened to serve Plaintiffs with a lawsuit (a lawsuit which ARA knew or should have known

would have been wholly without merit and would have violated the discharge injunction).  On August 20, 2013 ARA sent a letter to Plaintiffs informing them that if they did not pay the $2,986.12 settlement by the agreed upon date, the full balance of $10,597.19 would become due. Throughout late 2013 and early 2014, ARA made at least 23 phone calls to Plaintiffs' cell phones seeking payment on the debt.[2]  These phone calls again threatened legal action.  ARA also falsely represented that Plaintiffs would need a supervisor sign off on any summons and be made available as a potential witness should ARA serve Plaintiffs at their place of employment. There can be no question that ARA knew the discharge injunction had been entered and that it intended the actions which violated the injunction. Having found that ARA willfully violated the discharge injunction, the Court turns to the issue of damages.

*Actual Damages*

Plaintiffs seek actual damages, including compensation for emotional distress.  At the November 17, 2014 hearing, Ms. Diaz testified that the repeated phone calls caused her and her husband a great deal of stress because they were afraid Mr. Diaz could go to jail.  Ms. Diaz further testified that she went to see a doctor because of the stress, that she frequently had trouble sleeping during this time, and that she cried the first time ARA mentioned her son's credit rating. (ECF No. 18 at 14-15).  Despite this testimony, the Court finds that Plaintiffs have not met the burden in order to recover damages for emotional distress.  The Fifth Circuit has set forth the standard for an award of emotional distress damages in *Hitt v. Connell*:

> [H]urt feelings, anger, and frustration are part of life and are not the types of emotional harm that could support an award of damages.  The plaintiff must instead present *specific* evidence of emotional damage: there must be a specific discernable injury to the claimant's emotional state, proven with evidence regarding the nature and extent of the harm.  To meet this burden, a plaintiff is not

---

[2] Although the speakers in several of these phone calls identified themselves as representing other entities than ARA, Plaintiffs allege that they were using different names all to collect for ARA.  Because default has been entered, the Court accepts this allegation as true.

absolutely required to submit corroborating testimony (from a spouse or family member, for example) or medical or psychological evidence.  The plaintiff's own testimony, standing alone, may be sufficient to prove mental damages but only if the testimony is particularized and extensive enough to meet the specificity requirement discussed above.

301 F.3d 240, 250-51 (5th Cir. 2002) (internal citations and quotations omitted) (emphasis in original).  Ms. Diaz has not provided corroborating testimony from either her husband or her physician regarding her emotional distress.  Although this is not in itself fatal to an emotional damages claim, she has not provided specific evidence of emotional harm, but rather generalized testimony that she felt stress and lost sleep.  Accordingly, the Court will not award emotional distress damages.

Plaintiffs, however, should be compensated for their time and effort spent in prosecuting this lawsuit.  "In order to ensure that debtors are not hesitant to prosecute violations of the discharge injunction, they should be awarded actual damages to compensate them for the time and effort they expend in the process."  *McLure v. Bank of Am. (In re McLure)*, 420 B.R. 655, 664 (Bankr. N.D. Tex. 2009).  Ms. Diaz testified that she took a total of two-and-a-half days off of work to consult with her lawyers and attend the November 17 hearing.[3]  She also drove approximately 130 miles to meet with her lawyer in McAllen. Plaintiffs' counsel proffered testimony of Mr. Diaz that he also took two-and-a-half days off of work in connection with the suit.[4]  The Court awards Plaintiffs a total of $591.20 in actual damages.[5]

---

[3] Ms. Diaz is paid $12.05 per hour by the Brownsville Independent School District.

[4] Mr. Diaz is also employed by the BISD and is paid $13.87 per hour.

[5] This figure assumes that Plaintiffs' each took 20 hours off of work and compensates them $0.56 per mile driven according to the 2014 IRS Standard Mileage Rates.

*Attorneys' Fees*

Plaintiffs ask the Court to award them a total of $12,236.92 in attorneys' fees and expenses.   Plaintiffs have employed two separate law firms in connection with this case. Plaintiffs' bankruptcy attorney Ellen Stone asserts that she and a paralegal spent a total of 16.4 hours on this matter with hourly rates of $350.00 and $95.00, respectively.   Stone originally requested $5,397.50 in fees and $70.14 in expenses, but has agreed to a $2,000.00 deduction, bringing the total to $3,467.64.   Plaintiffs' second law firm, Armstrong Kellett Bartholow P.C., spent a total of 39.6 hours on this matter with hourly rates ranging from $150.00 to $500.00. Armstrong Kellett Bartholow originally requested $10,905.00 in fees and $864.28 in expenses, but has agreed to a $3,000 deduction, bringing the total to $8,769.28.

The calculation of attorney's fees under federal law is a well-established process. Attorney's fees are awarded based on the lodestar method of computation.   *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).   First, the court calculates the lodestar fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers.   *Id.*   Next, the court considers whether to make a lodestar adjustment upwards or downwards depending on the circumstances of the case.[6]   *Id.*   Upon review of Plaintiffs' counsels' records detailing the dates, amounts, and types of service provided, as well as their hourly rates, the Court finds the attorneys' fees and expenses are appropriate and will award the total amount sought, minus the agreed deductions.

---

[6] The court should consider the following twelve factors when considering whether to make an adjustment: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

*Coercive Sanctions and Injunctive Relief*

The Court finds that ARA's conduct was sufficiently egregious to warrant coercive sanctions. The decision to award sanctions for a willful violation of a discharge injunction is within the discretion of the bankruptcy court. *Placid Refining Co. v. Terrebonne Fuel and Lube, Inc. (In re Terrebonne Fuel and Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997). The 524(a) discharge is an essential feature of the bankruptcy process. Without it, there can be no fresh start. ARA acted in flagrant disregard of the discharge injunction by repeatedly attempting to collect a debt that it knew had been discharged. The methods by which ARA actually attempted to collect the debt are particularly troublesome as well. They threatened Plaintiffs with jail time, threatened to ruin the credit rating of Plaintiffs' son (who had never been personally liable for the debt), and threatened to serve Plaintiffs' with a meritless lawsuit. The Court must act firmly to prevent this conduct from occurring again in the future.

As discussed above, Plaintiffs provided to the Court a total of 23 voicemail recordings. Plaintiffs have also provided a transcript of a letter dated August 20, 2013 from an ARA employee. Plaintiffs have also described in detail two conversations Ms. Diaz had with ARA representatives shortly after Plaintiffs received the initial letter from ARA. Each of these 26 communications violated the discharge injunction.[7] Not every communication was abusive, however. Many of the recordings merely asked Plaintiffs to return the call in regards to possible litigation pending against Plaintiffs. The Court finds that four of the voicemail recordings were abusive.[8] In addition, the two conversations Ms. Diaz had with the ARA representatives in

---

[7] The August 12, 2013 letter and the August 13, 2013 letter (ECF No. 1-1 at 16-18) were written before the evidentiary record demonstrates that ARA had knowledge of the discharge injunction. Accordingly, these communications have not been demonstrated to be willful violations of the injunction.

[8] The first abusive recording threatened to file a complaint "by the end of the day" if Plaintiffs did not return the call; the second and third recordings threatened to serve Plaintiffs at their place of employment and required a

August 2013 were abusive due to the numerous threats described above.  The Court sanctions ARA in the amount of $1,500.00 for each of the six abusive communications.  For each of the 22 non-abusive communications, the Court sanctions ARA $500.00  ARA is sanctioned a total of $17,000.00.

Plaintiffs have also requested that ARA be enjoined from seeking further collection of discharged debts.  The Fifth Circuit has recognized that § 105(a) grants bankruptcy courts the authority to grant injunctive relief.  *Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 523 (5th Cir. 2004).  A party seeking a permanent injunction must prove an irreparable injury for which there is no adequate remedy at law.  An adequate remedy at law exists if the situation to be enjoined can be remedied by legally measurable damages.  *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 848 (5th Cir. 2004).  If ARA continues to call Plaintiffs, damages alone would not compensate them for the stress caused by the harassing phone calls.  It appears that ARA continued to make calls as recently as October of 2014, when Plaintiffs met with their attorney regarding a new round of phone calls.  (Plaintiffs' Ex. No. 29). ARA persisted in their conduct despite facing the threat of court-ordered damages due to the complaint pending against them.  Injunctive relief is necessary to prevent further violations of the discharge injunction.  Accordingly, the Court grants Plaintiffs' request for an injunction.

### Conclusion

The Court will issue a judgment consistent with this memorandum opinion.

SIGNED **March 5, 2015.**

_____

Marvin Isgur

UNITED STATES BANKRUPTCY JUDGE

---

supervisor to be present; and the fourth recording asserted that if Plaintiffs did not return the call they would "waive their legal right to be heard on this issue."